# United States Court of Appeals for the Federal Circuit

05-1291


FREDRIC A. STERN,

Plaintiff-Appellant,

v.


THE TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK
and LASZLO Z. BITO,

Defendants-Appellees.


Donald W. Niles, Patterson, Thuente, Skaar & Christensen, P.A., of Minneapolis, Minnesota. With him on the brief was Norman M. Abramson.

John P. White, Cooper & Dunham LLP, of New York, New York, argued for defendants-appellees. With him on the brief were Peter D. Murray and Robert T. Maldonado. Of counsel on the brief were George A. Davidson and John Fellas, Hughes Hubbard & Reed LLP, of New York, New York.

Appealed from: United States District Court for the Southern District of New York

Judge Richard Conway Casey

# United States Court of Appeals for the Federal Circuit

05-1291

FREDRIC A. STERN,

Plaintiff-Appellant,

v.

THE TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK
and LASZLO Z. BITO,

Defendants-Appellees.

_____

DECIDED:  January 17, 2006
_____

Before MAYER, RADER, and LINN, Circuit Judges.

MAYER, Circuit Judge.

Frederic A. Stern appeals the judgment of the United States District Court for the Southern District of New York granting the Trustees of Columbia University in the City of New York's and Laszlo Z. Bito's (collectively "Columbia's") motion for summary judgment that Stern failed to present sufficient evidence to be added as co-inventor of United States Patent No. 4,599,353 ("the '353 patent").  Stern v. Trs. of Columbia Univ., No. 01-CV-10086 (S.D.N.Y. Feb 17, 2005).  We affirm.

Background

Columbia University is the owner of the '353 patent, which is directed towards the use of prostaglandins in treating glaucoma. Lazlo Z. Bito is the named inventor of the '353 patent, and was a long-time faculty member at Columbia University. In 1980, while Stern was a medical student at Columbia University, he approached Bito about doing a one semester ophthalmology research elective in his laboratory. Bito agreed and directed Stern to begin his project by reviewing Bito's papers on prostaglandins and intraocular pressure ("IOP"). At that point, Bito had published numerous papers on the effects of prostaglandins on the IOP in various animals, notably rabbits and owl monkeys, and had concluded that rhesus monkeys would be good subjects for further studies on the effects of prostaglandins on IOP. Experiments Stern conducted while working in Bito's laboratory showed that topical application of a single dose of prostaglandin reduced IOP in rhesus monkeys and cats. Stern's experiments did not prove whether tachyphylaxis would develop in primates, the absence of which is required for successful glaucoma treatment. After Stern's departure from Columbia, Bito conceived the '353 patent while studying the effects of repeated prostaglandin application on the IOP in rhesus monkeys. Bito applied for the patent in 1982 and, in 1986, it was issued. Claim 1 states:

> [a] method for treating hypertension or glaucoma in a primate subject's eye comprising periodically contacting the surface of the eye with an amount of an eicosanoid or an eicosanoid derivative effective to reduce intraocular pressure in the eye without any substantial initial increase in said pressure and to maintain reduced intraocular pressure.

'353 col.16, ll.5-11.

When Stern found out about the '353 patent, he brought suit seeking to be added to the patent as a co-inventor of the patent's independent claim one and dependent claims 3, 5, and 9 through 12. Stern also asserted state law claims for fraudulent concealment, breach of fiduciary duty, and unjust enrichment.

In determining inventorship, the trial court first construed the claims of the '353 patent. The only disputed phrase was the meaning of "to maintain reduced intraocular pressure" in claim 1. The trial court found that Columbia's proposed construction of the phrase to mean "maintenance of reduced intraocular pressure throughout the course of treatment without development of tachyphylaxis, i.e., throughout the period of time that the claimed method is being used to treat glaucoma" was correct. Using that construction, the trial court determined that Stern failed to present clear and convincing evidence of inventorship, as required to be added as a co-inventor to a published patent. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1358 (Fed. Cir. 2004). Accordingly, the trial court granted Columbia's motion for summary judgment. Because the state law claims for fraudulent concealment, breach of fiduciary duty, and unjust enrichment depended on the addition of Stern as a co-inventor of the '353 patent, the trial court also granted summary judgment to Columbia on those claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a).

## Discussion

We review the district court's grant of summary judgment de novo. See Caterpillar Inc. v. Sturman Indus., 387 F.3d 1358, 1373 (Fed. Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Because a patent carries a statutory presumption of validity, 35 U.S.C. § 282, Stern had the burden of showing by clear and convincing evidence, after all reasonable inferences were drawn in his favor, that he was an inventor of the '353 patent.

Because "[c]onception is the touchstone of inventorship," each joint inventor must generally contribute to the conception of the invention. Burroughs Wellcome Co. v. Barr Labs., Inc., 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). Additionally, courts require corroborating evidence of conception. Id. at 1228. However, contribution to one claim is sufficient to be a co-inventor. Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998). Conception is defined as "the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation omitted). Conception is complete when "the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." Burroughs Wellcome, 40 F.3d at 1228.

Here, Stern did not have an understanding of the claimed invention, did not discover that prostaglandins have an effect on IOP, did not discover that repetitive application of prostaglandins to the eyes of primates can maintain reduced IOP, and did not conceive of the idea of the use of prostaglandins to reduce IOP in primates. Furthermore, there was no collaboration between Stern and Bito in developing a glaucoma treatment. Stern simply carried out an experiment previously done by Bito on

05-1291                                        4

different animals—animals that Bito had already determined would be good models for prostaglandins research. Stern's contribution is insufficient to support a claim of co-inventorship.

Stern also argues that material in his laboratory notebooks would have proved his claim of co-inventorship, but that they were destroyed by Bito. However, regardless of the contents of the notebooks, unwitnessed laboratory notebooks on their own are insufficient to support his claim of co-inventorship. See Hybritech, 802 F.3d at 1378. Thus, the evidence Stern presented was insufficient to corroborate his claim of co-inventorship.

## Conclusion

Accordingly, the judgment of the United States District Court for the Southern District of New York is affirmed.

## AFFIRMED