**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 9, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 05-5186

LAWRENCE SAMUELS, JR., also
known as Michael Douglas Lewis,

Defendant - Appellant.

**Appeal from the United States District Court**
**for the District of N. D. Oklahoma**
**(D.C. No. 04-CR-157-CVE)**

Douglas Edward Snow, Assistant United States Attorney (David E. O'Meilia,
United States Attorney, and Shannon L. Henson, Assistant United States
Attorney, on the briefs), Tulsa, Oklahoma, for Plaintiff - Appellee.

Dennis A. Caruso, Caruso Law Firm, P.C., Tulsa, Oklahoma, for Defendant -
Appellant.

Before **O'BRIEN, SEYMOUR** and **TYMKOVICH**, Circuit Judges.

**O'BRIEN**, Circuit Judge.

Lawrence Samuels, Jr., pled guilty to possession with intent to distribute

cocaine base (crack cocaine) with a reservation of some appeal rights. He was sentenced to 210 months imprisonment. He argues the district court erred in denying his motion to suppress evidence, failing to allow him to withdraw his guilty plea based on ineffective assistance of counsel and failing to vacate the plea agreement based on the doctrines of mutual mistake of fact and law, public policy and unconscionability. We affirm the denial of the motion to suppress and decline to address the remaining arguments.

## I. Background

On March 18, 2004, law enforcement officers Jeffrey Gatwood, Brandon McFadden and William Wolthuis, riding in a single police vehicle, were on patrol in North Tulsa, Oklahoma.[1] Gatwood received a page from a reliable confidential informant. Gatwood called the informant who told him he had seen a black man in a white El Camino selling crack cocaine in the parking lot of a nearby convenience store on several occasions and that this person was presently at the store. The informant provided the name and location of the store. Upon arrival at the store, the officers observed a black male in a white El Camino (Samuels) and saw another man leave the store and enter the El Camino. Believing a drug transaction was about to occur, the officers activated their vehicle's emergency lights and blocked the El Camino with their vehicle. Wolthuis approached

---

[1] We recite the facts in light most favorable to the government. It is so entitled because it prevailed in a contested hearing which involved fact finding, including witness credibility.

Samuels, obtained his consent to search the El Camino and patted him down. The officers found a total of 9.35 grams of crack cocaine in the vehicle and $765 in cash on Samuels's person. The crack cocaine was contained in several small baggies and was found hidden near the brake pedal.

Samuels was indicted for possession with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Samuels filed a motion to suppress evidence, claiming the officers lacked reasonable suspicion to stop his vehicle in the store's parking lot. The district court held a hearing on the motion. After he testified, Gatwood approached and spoke to McFadden, who had not yet testified, in violation of the court's sequestration order. Nevertheless, the district court relied on Gatwood's testimony (along with other evidence) in denying the motion to suppress.

Samuels pled guilty to the indictment pursuant to a plea agreement. However, in reaching the agreement, both the government and Samuels's attorney failed to appreciate that Samuels was a career offender under the federal sentencing guidelines. As a result, the parties erroneously estimated Samuels's guideline range as 100-120 months. Upon reviewing the presentence report, both parties realized their mistake concerning Samuels's career offender status and the resulting increase in the sentencing range under the guidelines (210-262 months).

Samuels did not seek to withdraw his guilty plea based upon the misunderstanding. Instead, he filed a motion for downward departure based on 18

-3-

U.S.C. § 3353(a). The district court suggested the motion for downward departure might be more appropriately characterized as a motion for variance and requested briefing from the parties concerning whether their mutual mistake of law[2] constituted grounds for Samuels to withdraw his plea or for a variance. Samuels subsequently filed a motion for variance.[3] In the motion, it was clear he was not seeking to withdraw his plea. At the hearing on the motion for variance, defense counsel moved to withdraw as counsel stating he had provided ineffective assistance by failing to correctly advise Samuels about the applicable guideline range. The court denied this motion, concluding: 1) counsel was not ineffective, and 2) there were no grounds for Samuels to withdraw his plea. The court also denied Samuels's motions for downward departure and variance, applied the career offender enhancement, and sentenced Samuels to 210 months imprisonment.

---

[2] Samuels argues mistake of fact and law. We agree with the district court; it was a mistake of law. Both attorneys were aware of Samuels' prior convictions, they simply failed to appreciate the legal significance of those convictions.

[3] A departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A variance occurs "[w]hen a court enhances or detracts from the recommended range through application of § 3553(a) factors." *Id.*

## II. Discussion

### A. Denial of Motion to Suppress

At the suppression hearing, Gatwood, McFadden and Wolthuis gave differing accounts of the details of events prior to their encounter with Samuels in the convenience store's parking lot. Gatwood testified that while on patrol with McFadden and Wolthuis, he received a page from an informant with whom he had worked over the past several years and who had given him twenty-five to thirty reliable tips. Gatwood called the informant with his cell phone. The informant told Gatwood he had seen a black man in a white El Camino selling crack cocaine in the parking lot of a nearby convenience store on several occasions and the person was presently at the store. The informant included the name and location of the store. The officers proceeded to the store to investigate the tip. It took them five to ten minutes to get there.

Neither McFadden nor Wothuis could recall the phone call between Gatwood and the informant.[4] McFadden also testified they did not go to the store with the intent of investigating a tip; rather, they "just happened to be in the area" when Gatwood saw the El Camino and told them to investigate due to his tip. (R. Vol. III at 58.) Wolthuis's testimony was different still. He said Gatwood directed them to the store but was not sure when Gatwood told them to investigate the El Camino

---

[4] Gatwood admitted the other officers should have witnessed his side of the telephone conversation because they were in the vehicle with him at the time he received the tip.

and, in particular, could not say whether Gatwood told them to pull into the parking lot upon seeing the El Camino.

Samuels challenges the district court's denial of his motion to suppress. Specifically, he contends the court should have disregarded Gatwood's testimony concerning the tip because (1) his credibility was suspect given his violation of the court's sequestration order and (2) his testimony was not corroborated by McFadden or Wolthuis. Disregarding Gatwood's testimony, Samuels argues the remaining evidence (McFadden and Wolthuis's testimony) is insufficient to establish reasonable suspicion to stop his vehicle.

1. Violation of Sequestration Order

Rule 615 of the Federal Rules of Evidence provides: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." This rule "requires not only that prospective witnesses be excluded from the courtroom, but also that they be prohibited from discussing the case with other witnesses." *United States v. Greschner*, 802 F.2d 373, 375-76 (10th Cir. 1986) ("[A] circumvention of the rule [occurs] where witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify.") (quotations omitted). At the suppression hearing, Gatwood violated the sequestration order by talking with McFadden, who had not yet testified. Overruling Samuels' objection, the court did not strike Gatwood's testimony;

instead, it deemed Gatwood's testimony credible and relied upon it in denying Samuels' motion to suppress. Samuels argues the court should have stricken Gatwood's testimony.

Because Gatwood violated Rule 615, we review the court's decision to admit his testimony for an abuse of discretion. *United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir. 1978) (the choice of sanction for a Rule 615 violation is within the district court's discretion). Here, the court apparently did not see the need to impose the most serious sanction of excluding testimony. It was a carefully considered decision. First, the judge allowed examination of Gatwood and McFadden in order to determine the full extent and consequences of Gatwood's violation. While their testimony was conflicting,[5] the court apparently credited McFadden's statement that he did not understand much that Gatwood said. Thus, the court could reasonably conclude the violation did not affect McFadden's testimony.[6] Second, the district court, *sua sponte*, called Wolthuis to testify, thereby considering the perspective of another officer in the vehicle at the time the

---

[5] McFadden testified: "I didn't hear or understand what [Gatwood] was saying . . . . or pay any attention to what he was saying. [I heard him say] [s]omething about Officer . . . Wolthuis and us were together, and that's all I understood him to say." (R. Vol. III at 56-57.) Gatwood denied making such a statement and testified he told McFadden his testimony was required and asked him if he wanted him to watch his belongings.

[6] Interestingly, Samuels does not challenge the admission of McFadden's testimony, although McFadden, having not yet testified, was most at risk of being influenced by a violation of the sequestration order.

officers approached Samuels. Given the court's determined efforts to get to the truth of the matter and its considered decision based upon the available evidence, we applaud its efforts as a reasonable exercise of discretion.

2. Lack of Reasonable Suspicion to Stop

When reviewing the denial of a motion to suppress, we review factual matters for clear error and questions of legal reasonableness *de novo*. *United States v. Riccardi*, 405 F.3d 852, 859 (10th Cir.), *cert. denied*, 126 S.Ct. 299 (2005). "We consider the totality of the circumstances and view the evidence in the light most favorable to the government." *Id.* at 860.

The Fourth Amendment extends to brief investigatory stops of persons and vehicles. *Whren v. United States*, 517 U.S. 806, 809-10 (1996)*; Terry v. Ohio*, 392 U.S. 1, 9 (1968). A two part test guides us in determining whether the officers' stop of Samuels' person or vehicle was reasonable. *Terry*, 392 U.S. at 19-20; *see United States v. Bustillos-Munoz*, 235 F.3d 505, 511-12 (10th Cir. 2000). We ask "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20. In this case, Samuels challenges the court's conclusion that the first prong of this test was satisfied, *i.e.*, the officers had reasonable suspicion to conduct the investigatory stop in the first instance.

"A confidential tip may justify an investigatory stop if under the totality of the circumstances the tip furnishes both sufficient indicia of reliability and

sufficient information to provide reasonable suspicion that criminal conduct is, has, or is about to occur." *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997). To determine whether a tip is sufficiently reliable under the totality of the circumstances, we look to "the credibility or veracity of the informant, the basis of the informant's knowledge, and the extent to which the police are able independently to verify the reliability of the tip." *Id.*

Here, even though it was not corroborated by either McFadden or Wolthuis, the district court credited Gatwood's testimony that 1) a confidential informant paged him while he was on patrol with McFadden and Wolthuis, (2) the informant told him he had observed a black male selling crack cocaine out of a white El Camino in the parking lot of the convenience store on several occasions and this individual was presently in the El Camino in the store's parking lot, and 3) this informant had provided him with accurate information twenty-five to thirty times in the past, resulting in ten to twenty arrests. We see no reason to disturb this credibility determination.[7] *United States v. Alexander*, 447 F.3d 1290, 1294 (10th

---

[7] Samuels makes the curious argument that the district court should not have determined Gatwood's testimony credible unless it was corroborated by other witnesses. Although it is true that corroboration may bolster offered testimony, corroboration is generally not necessary for the court to find testimony credible. *See Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006) ("[C]orroboration is fundamentally about 'credibility,' . . . and . . . in reviewing factual findings under the clear error standard, this court gives great deference to the district court's decisions regarding credibility of witnesses.") (quotations omitted). Requiring corroboration seems to be the exception, not the rule. *Compare People v. Guido*, 184 N.E.2d 858, 860 (Ill. 1962) ("[T]he testimony of a single witness, if it is positive and the witness credible, is

Cir.) (at a suppression hearing, "[t]he credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court"), *cert. denied*, 127 S.Ct. 315 (2006); *see also Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [Federal Rule of Civil Procedure] 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

Gatwood's testimony regarding the confidential informant's past reliability established the reliability of the tip. *See Leos-Quijada,* 107 F.3d at 792-93 (tip was reliable where informant's previous tips resulted in the discovery of at least three marijuana loads and led to successful apprehensions approximately fifty percent of

---

sufficient to convict even though it is contradicted by the accused."), *Fisher v. Commonwealth*, 321 S.E.2d 202, 204 (Va. 1984) ("[T]he victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction."), *Vlahos v. State*, 75 P.3d 628, 636 (Wyo. 2003) ("[I]n Wyoming as well as in other states that follow the common law, no corroboration of accomplice testimony is required, and a conviction can be sustained on such testimony alone if it is convincing and credible."); *with Medichem*, 437 F.3d at 1169 (in patent context, corroborating evidence is necessary to prove certain claim), *and Millsap v. State*, 621 S.E.2d 837, 839 (Ga. App. 2005) ("To sustain a felony conviction based upon the testimony of an accomplice, there must be independent corroborating evidence, either testimony from another witness or corroborating circumstances, which connects the accused to the crime.").

the time).[8] Gatwood also testified drug transactions occurred often in the convenience store itself and the area surrounding it. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (while insufficient standing alone, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis"). Lastly, he testified the officers observed a male leave the store and enter

---

[8] The district court suggested that the officers' observation of a black man in a white El Camino in the parking lot of the store corroborated the tip, lending it some additional indicia of reliability. If that is true, it is only marginally so. The only information the officers corroborated about the tip before making the stop in this case was information that was plainly visible to any passerby. As the Supreme Court explained:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Florida v. J.L.*, 529 U.S. 266, 272 (2000). Our cases have also emphasized this point. *See United States v. Garner*, 416 F.3d 1208, 1215 (10th Cir. 2005) ("[W]hen the only information corroborated is readily available and does not itself indicate that a crime has been committed, reasonable suspicion may be lacking."); *United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001) ("Almost anyone can describe the residents of, and vehicles at, a particular home without having any special knowledge of what goes on inside the home."). Had the reliability of the informant been unknown, as in the case of a tip from an anonymous source, the officers would generally have needed to verify details of the tip beyond the identifying information available for observation by the general public. *J.L.*, 529 U.S. at 270.

However, the court's comments do not affect the outcome here. Because the court credited Gatwood's testimony about the informant's reliability, the tip did not have to be corroborated as to the allegation of illegal conduct to have the indicia of reliability that would support reasonable suspicion. *See id.*

the El Camino, which, based on his training and experience, was consistent with a drug transaction. We agree with the district court that the facts, considered in their totality, supported a reasonable suspicion that illegal activity was about to occur.

B.      Failure to Allow Samuels to Withdraw Plea Based on Ineffective Assistance of Counsel

At the hearing on the motion for variance, defense counsel moved to withdraw because he believed he had rendered ineffective assistance of counsel. The court denied the motion to withdraw, finding counsel was not ineffective and there were no grounds for Samuels to withdraw his plea. Samuels argues the court erred in not allowing him to withdraw his plea based on his counsel's ineffectiveness. We do not reach this claim. Because Samuels did not move to withdraw his plea, the issue is waived. *Callahan v. Poppell*, 471 F.3d 1155, 1161 (10th Cir. 2006) ("As a general rule, issues that are not raised before the district court are waived.").

As part of this issue, Samuels attempts to assert an ineffective assistance of counsel claim, but we decline to address the issue. "Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). Although we may review an ineffective assistance of counsel claim on direct appeal if the record is fully developed, such cases are "rare." *Id.* Here, the

court addressed the ineffectiveness of defense counsel because counsel moved to withdraw based on his belief he had been constitutionally ineffective. However, we are not prepared to say this brief portion of the record below completely develops all issues that might be brought in collateral proceedings. A collateral proceeding would allow consideration of the record as a whole, including defense counsel's failure to move to withdraw the plea or vacate the plea agreement, which may assist in the resolution of an ineffective assistance claim.

C.     Failure to Vacate Plea Agreement Based on Mutual Mistake, Public Policy and Unconscionability

Samuels claims the district court erred in not vacating the plea agreement based on the parties' failure to consider his career offender status at the time they negotiated the agreement.[9] Again, we do not reach this issue because Samuels never requested the district court to vacate the plea agreement.[10] *Callahan,* 471 F.3d at 1161.

**AFFIRMED.**

---

[9] In similar circumstances, where the plea agreement was made with knowledge that an estimated sentence is non-binding on the court, we found a defendant could not avoid the agreement based on a mutual mistake in calculating the sentencing guideline range or via an analogy to the doctrine of frustration of purpose. *United States v. Ahlenius*, 198 F.3d 259, No. 98-1414, 1999 WL 909836, at *3 (10th Cir. Oct. 19, 1999) (unpublished). Unpublished opinions are not binding precedent. We mention *Ahlenius* only because of its persuasive value. *See* 10th Cir. R. App. P. 32.1(A).

[10] On appeal, Samuels does not challenge the district court's disposition of motions his counsel actually made, *i.e.*, the motions for downward departure and for variance.