**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CHRISTOPHER LAMAR
GOODLETT, a/k/a Christopher L.
Goodlett,

      Defendant - Appellant.

No. 07-5116
(D.C. No. 4:07-CR-010-001-JHP)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

## I. INTRODUCTION

On January 12, 2007, an indictment returned by a grand jury in the

Northern District of Oklahoma charged Christopher Goodlett with (Count 1)

being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C.

§§ 922(g)(1), 924(a)(2)); and (Count 2) possession of an unregistered firearm, in

violation of 26 U.S.C. §§ 5861(d), 5871. Mr. Goodlett filed a motion to suppress

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th
Cir. R. 32.1.

the evidence, which was denied.

A suppression hearing was held before a magistrate judge. The district court filed an order adopting the findings of the magistrate judge and denying Mr. Goodlett's motion to suppress. On March 20, 2007, Mr. Goodlett entered a conditional guilty plea, pursuant to a plea agreement, which reserved the right to appeal the denial of his motion to suppress evidence.

On June 27, 2007, the district court imposed two concurrent sentences of fifty-seven months' incarceration, three years of supervised release, and a fine of $3,600 as to Count 1. We exercise appellate jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

The events leading up to this case occurred on November 28, 2006. Natashia Galle called 911 at approximately 12:06 a.m. that night to report that her ex-husband was in violation of a protective order, attempting to break into her home, and had threatened to kill her. R.I, Doc. 21 at 1. Ms. Galle told the 911 operator that her exhusband was wearing a blue shirt. *Id.* at 1-2. Tulsa Police officers Keith Osterdyk and Brandon Smith received this information from Dispatch and proceeded to Ms. Galle's residence. *Id.* at 2, 7. Officer Osterdyk arrived first at approximately 12:13 a.m.

Officer Osterdyk spoke with Ms. Galle about her ex-husband, Darryl Celius. Ms. Galle explained that Mr. Celius had threatened to kill her. Ms. Galle told Officer Osterdyk that she could see Mr. Celius when she looked through the

blinds in the front window of her house. *Id.* at 2. She stated that Mr. Celius was wearing a brown jacket and a light-colored ball cap. Ms. Galle then pointed out a man nearby and said that he could be Mr. Celius. Officer Smith was at the residence at this point and he and Officer Osterdyk approached the man and asked for identification. It showed he was not Ms. Galle's ex-husband.

The officers returned to Ms. Galle and continued speaking. Ms. Galle told Officer Osterdyk that her ex-husband frequented a nearby convenience store. Officer Osterdyk clarified the location of the convenience store that she was referring to and decided to drive over and look for Mr. Celius. On the way to the convenience store and at the convenience store, Officer Osterdyk did not see anyone fitting the information he had received at that point in time. Officer Osterdyk proceeded west when he left the shopping center.

While Officer Osterdyk was driving west, he encountered a man, who later turned out to be Christopher Goodlett, walking along the street about a mile away from Ms. Galle's home. R.I, Doc. 21 at 2. Officer Osterdyk saw that the suspect was wearing brown coveralls and believed that he was wearing a light colored ball cap.[1] R.I, Doc. 21 at 3, 7. Officer Osterdyk pulled up next to Mr. Goodlett, shined his police flashlight on him, rolled down his window, and asked for his name. Mr. Goodlett responded "Chris." Officer Osterdyk asked if he had any

---

[1] Ultimately, the parties stipulated that the suspect was not wearing a ball cap because no cap was found in his property bag at the Tulsa County Jail.

identification on him and Mr. Goodlett stated that he did not. Officer Osterdyk then got out of his patrol car and walked towards Mr. Goodlett. At this point, Officer Smith pulled his patrol car behind Officer Osterdyk's car. As Officer Osterdyk approached Mr. Goodlett, he noticed that the coveralls were unzipped and Officer Osterdyk could see a "pistol grip handle with some red tape and what looked like a shotgun" inside the coveralls. Report and Recommendation of March 2, 2007 at p. 3.

Officer Osterdyk drew his gun and told Mr. Goodlett not to move, to remove his right hand from his pocket, and not to move his left hand. Officer Smith then placed handcuffs on Mr. Goodlett's hands. Officer Osterdyk grabbed the shotgun protruding from Mr. Goodlett's coveralls. The shotgun had a shortened barrel and was loaded. Officer Osterdyk arrested Mr. Goodlett at that time for possessing a sawed off shotgun.

Mr. Goodlett filed a motion to suppress the evidence and argued that he was stopped and seized by police without reasonable suspicion. A suppression hearing was held on February 28, 2007 where Officer Osterdyk and Michael Rider (the 911 operator) testified. After the hearing, the magistrate judge produced a Report and Recommendation on March 2, 2007 denying the Defendant-Appellant's motion to suppress the evidence. The Report and Recommendation found that if Mr. Goodlett was seized at the time, the seizure was justified at its inception and that the officers' actions were reasonably related in scope to the

circumstances which justified the stop in the beginning.  March 2, 2007 Report and Recommendation at p. 8.  On March 19, 2007, the district court adopted the Report and Recommendation of the magistrate judge.

## III. DISCUSSION

The two arguments offered on appeal by the Defendant-Appellant are: (1) the district court erred by failing to find that Mr. Goodlett was seized when initially encountered by police and (2) the district court erred in holding that if there was a seizure, it was justified by reasonable suspicion that Mr. Goodlett was the individual sought for threatening Ms. Galle.  Brief of Appellant at p. 4.

A. *Standard of Review*

The applicable standard of review for examining the reasonableness of a warrantless search or seizure under the Fourth Amendment is *de novo*.  *United States v. Samuels*, 493 F.3d 1187, 1191 (10th Cir. 2007).  With regard to the district court's findings of fact, adopted from the magistrate judge's report, we review only for clear error.  *United States v. Samuels*, 493 F.3d at 1191.

B. *The Initial Encounter*

The magistrate judge's written Report and Recommendation, adopted by the district court, stated that

> the Court finds that if [Mr.] Goodlett were seized and thus entitled to the protections of the Fourth Amendment, his detention was justified at its inception and the officers' actions were reasonably related in scope to the circumstances which justified the interference in the first place.

March 2, Report and Recommendation at p. 8. The magistrate judge further found that reasonable suspicion existed sufficient to justify the officer's detention and request for identification. *Id.* at p. 6. It is important to note in the district court's March 19th, 2007 written Order adopting the magistrate judge's Report and Recommendation, that the district court stated that it

> interprets the Magistrate Judge's Report and Recommendation to have assumed, rather than conclusively determined, that the Defendant was "seized," the Court likewise finds the Government's objection [that the Magistrate Judge erred in concluding that Mr. Goodlett was seized] to be without merit.

District Court Order, March 19, 2007 at p. 2 n. 1.

This clarification is important. As noted in the district court's Order, the court *assumed* for purposes of the instant case that Mr. Goodlett was seized at the inception of the stop and that the seizure was supported by reasonable suspicion. Neither the Magistrate Judge nor the district court's Order conclusively determined that the factors involved in the instant case lead to the conclusion that Mr. Goodlett was seized. Instead, the district court's ruling assumes *arguendo* that Mr. Goodlett was seized and decided the suppression issue on the basis that the detention was supported by reasonable suspicion.

Likewise, we assume for the purpose of argument that Mr. Goodlett was seized and next determine whether the holding of the district court – that the

seizure was justified by reasonable suspicion – is correct.[2]

*C. Reasonable Suspicion*

Although we decline to conclusively state whether or not the factors in the instant case support a finding that Mr. Goodlett was seized at the inception of the encounter, we assume for purposes of this argument that he was seized. Any investigative detention, *Terry v. Ohio*, 392 U.S. 1 (1968), requires that the stop be supported by reasonable and articulable suspicion of criminal activity. In *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), the Supreme Court held that law enforcement "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Additionally, we have held that the reasonableness of a Terry stop is evaluated objectively and such evaluation must consider the totality of the circumstances and the information available to the officers. *United States v. Lang*, 81 F.3d 955, 965 (10th Cir. 1996). In *Oliver v.*

---

[2] We need not conclusively address the issue of whether the initial encounter constituted a seizure because we resolve the instant appeal by assuming that a seizure occurred and focusing on the reasonable suspicion issue. It is noteworthy, however, that both Supreme Court precedent and our own precedent state clearly that law enforcement officers are entitled to request identification from individuals without necessarily effectuating an investigatory detention. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991); *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984); *United States v. Johnson*, 364 F.3d 1185, 1188-89 (10th Cir. 2004); *see also United States V. Foster*, 376 F.3d 577, 584 (6th Cir. 2004). However, a number of factors impact this analysis including among others, the officer's tone of voice, whether or not commands such as 'Stop!" are issued, whether or not the officer is in uniform or armed, the number of officers present, and others. We elect not to engage in this analysis and in turn focus on whether or not the officers had the requisite reasonable suspicion to detain Mr. Goodlett.

*Woods*, 209 F.3d 1179, 1188 (10th Cir. 2000), we held that behavior susceptible to innocent interpretation may nevertheless create reasonable suspicion depending on the totality of the circumstances confronting the officer.

Our inquiry must begin with the information known to the officers just prior to stopping Mr. Goodlett. First, the officers were notified that Ms. Galle had called 911 and said she required their attention because her life had been threatened by an ex-husband who was allegedly in violation of a protective order and was recently at her home. Second, the officers were informed by Ms. Galle that she viewed her ex-husband through the blinds of her front window. Third, Ms. Galle pointed out a man across the street from her house whom she thought might be her ex-husband, but was in fact not. Fourth, Ms. Galle gave them a more detailed description of what her ex-husband was wearing: a brown jacket or coat and a ball cap. Fifth, Ms. Galle provided the officers with a location frequented by her ex-husband where he might be located because it was near her residence. Sixth, while patrolling the area, Officer Osterdyk saw Mr. Goodlett walking down the street in brown coveralls. Seventh, Officer Osterdyk's encounter with Mr. Goodlett was roughly thirty minutes after officers left to patrol the area around the convenience store and where Mr. Goodlett was found approximately one mile from Ms. Galle's residence.

At the suppression hearing, Officer Osterdyk testified that when Ms. Galle told him that she was looking through the blinds at her ex-husband, he thought that

it might have been difficult for her to see what her ex-husband was wearing. Thus, Officer Osterdyk testified that he believed that her ex-husband could have been wearing coveralls similar to Mr. Goodlett's and that Ms. Galle may not have realized this due to her obstructed view.

Given the totality of the circumstances, including the proximity of Mr. Goodlett to Ms. Galle's house, the fact that it was late at night when Mr. Goodlett was walking down the street, his presence in the area near the store which Ms. Galle stated her ex-husband frequented, and the similar color of the outer clothing, we must agree that Officer Osterdyk had a basis for reasonable suspicion to briefly detain Mr. Goodlett and request his name and identification. While Mr. Goodlett's walk down the street may be innocent activity, we have consistently held that behavior susceptible to innocent interpretation may nevertheless create reasonable suspicion depending on the totality of the circumstances confronting the officer. *Oliver v. Woods*, 209 F.3d at 1188. We find that the totality of the circumstances in the instant case created sufficient reasonable suspicion to justify Officer Osterdyk's brief detention of Mr. Goodlett. *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

Finally, it should be noted that Officer Osterdyk only asked for Mr. Goodlett's name and identification. These are minimal pieces of information that involved only a brief detention in order to maintain the status quo while obtaining more information. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Due to the

totality of the circumstances, Officer Osterdyk had the requisite reasonable suspicion to justify the investigatory detention of Mr. Goodlett.

When Mr. Goodlett stated his name and denied having identification, Officer Osterdyk exited his patrol car and approached Mr. Goodlett. On his way around his car, Officer Osterdyk saw the handle of a pistol protruding from Mr. Goodlett's coveralls. At this point in time, Officer Osterdyk drew his gun and told Mr. Goodlett not to move his hands while Officer Smith handcuffed him. The presence of the shotgun, which Officer Osterdyk saw in plain view, justified the arrest of Mr. Goodlett.

## IV. CONCLUSION

We **AFFIRM** the written Order of the district court denying Mr. Goodlett's motion to suppress the evidence. We find that the officers had the requisite reasonable suspicion to detain Mr. Goodlett. Accordingly, we also **AFFIRM** the conviction of Defendant-Appellant Goodlett.

**IT IS SO ORDERED.**

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

-10-