FILED
**United States Court of Appeals**
**Tenth Circuit**

**July 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DUSTY RONALD HARRIS,

Defendant - Appellant.

No. 24-8050
(D.C. No. 2:24-CR-00020-SWS-1)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

In this appeal, the parties dispute probable cause for a search. Probable cause can come from confidential informants when their information is reliable. *United States v. Neal*, 500 F.2d 305, 308 (10th Cir. 1974). And the information may be considered reliable when the

---

[*]    The parties agree to submission on the briefs, and oral argument would not materially aid our consideration of the appeal. So we have decided the appeal based on the briefs. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).

Our order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

informants themselves are reliable. *United States v. Long*, 774 F.3d 653, 660 (10th Cir. 2014).

In this case, the district court assessed an informant as sufficiently reliable to create probable cause. The court didn't err in that assessment.

**1.     The defendant is found with contraband based on information from a confidential informant.**

The case grew out of a confidential informant's statement that Mr. Dusty Harris was selling fentanyl and methamphetamine. After providing the statement, the informant agreed to help a law-enforcement officer (Agent Brady Patrick) gather evidence against Mr. Harris.

Agent Patrick gave the informant $500 to buy fentanyl from Mr. Harris on November 1. The informant gave the money to Mr. Harris, who entered a house to buy the fentanyl. Mr. Harris returned empty-handed, saying that his supplier didn't have the fentanyl.

On November 2, Agent Patrick gave the informant another $1,000 to pay Mr. Harris for the fentanyl. This time, the informant met Mr. Harris in the parking lot of a motel; and Mr. Harris gave the informant a pill bottle. But the bottle didn't contain fentanyl. (The bottle instead contained a combination of Aleve and a different controlled substance called *oxycodone*.)

On November 3, the informant told Agent Patrick that Mr. Harris would

- drive from Wyoming to Denver to buy more fentanyl,

- leave his truck in Denver as collateral, and

- drive another male in a black car and arrive at the informant's trailer on November 4 at about 11 a.m.

On November 4, Mr. Harris arrived at the informant's trailer. But when Mr. Harris left the trailer, he was driving a brown SUV (not a black car) and was accompanied by a female (rather than a male).

Agent Patrick directed another officer to stop and search Mr. Harris's vehicle. Inside were methamphetamine, fentanyl, and a scale.

**2.    The district court declines to suppress evidence of the drugs and the scale.**

In district court, Mr. Harris moved to suppress this evidence, arguing that law-enforcement officers had lacked (1) reasonable suspicion to stop the car or (2) probable cause to conduct a search. The court upheld the stop and the search, reasoning that the informant's statements to Agent Patrick had supplied probable cause to believe that the vehicle would contain fentanyl.

**3.    We use separate standards of review when considering the district court's findings and the existence of probable cause.**

On appeal, we accept the district court's factual findings unless they are clearly erroneous. *United States v. Burleson*, 657 F.3d 1040, 1044 (10th Cir. 2011). In determining whether the findings are clearly erroneous, we view the evidence in the light most favorable to the government and the

district court's ruling. *United States v. Cruz*, 977 F.3d 998, 1003 (10th Cir. 2020); *Burleson*, 657 F3d at 1044.

Based on the facts that are credited, we conduct de novo review of the reasonableness of the search. *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017). As a result, we independently consider whether probable cause existed. *Ornelas v. United States*, 517 U.S. 690, 691, 699 (1996). For this inquiry, the parties agree that probable cause turns on the reliability of the informant.

**4.    The informant's statements were reliable.**

In determining whether probable cause existed, the district court could consider the reliability of the informant in the past and in the runup to the traffic stop. *See United States v. Samuels*, 493 F.3d 1187, 1192 (10th Cir. 2007).

Agent Patrick testified that for a period of almost 1 ½ years, the informant had provided law-enforcement officers with information resulting in successful criminal investigations and prosecutions. In addition, Agent Patrick testified about what the informant had said before the traffic stop. From this testimony, the parties present two plausible perspectives.

From Mr. Harris's perspective, the informant had provided (1) information that was easily observable to anyone watching Mr. Harris and (2) statements about Mr. Harris that turned out to be wrong. For example,

Mr. Harris downplays the statements about his vehicles and his companion, pointing out that anyone watching him would have known what he was driving and who was inside. In addition, Mr. Harris points out that (1) the informant had identified the vehicle as a black car, and the vehicle turned out to be a brown SUV and (2) the informant had identified the other person in the vehicle as a male, and the person was actually a female. Finally, Mr. Harris points out that the informant failed twice to obtain fentanyl after getting money for the purchases.

From the government's perspective, the informant's statements showed direct knowledge about Mr. Harris's efforts to supply the fentanyl. For this perspective, the government points out that (1) Mr. Harris took the informant's money on November 2 and purchased an illegal drug (oxycodone) and (2) the informant repeated what Mr. Harris himself had said about the vehicles he was driving and who would be inside.

When we view the evidence favorably to the government, as required, we conclude that the search was supported by probable cause. Some of the informant's statements were accurate, and some were inaccurate. But in two respects, the statements suggested first-hand knowledge of the informant and Mr. Harris's involvement in drug-dealing.

First, the events on November 1 and 2 point to the informant's knowledge of Mr. Harris's involvement in drug-dealing. On November 1, Mr. Harris returned to the car without any drugs. But he took the

5

informant's money to buy fentanyl and told the informant that they would need to return because the supplier didn't yet have the fentanyl. When the informant returned the next day, Mr. Harris again took the money to buy fentanyl. Though Mr. Harris actually delivered a drug that wasn't fentanyl, the item (oxycodone) was illegal.

Second, the informant's statements about the Denver trip suggest first-hand knowledge about Mr. Harris's conduct. Granted, anyone surveilling Mr. Harris could have described the vehicle that he was driving and who was inside. But the informant wasn't conducting surveillance; he remained in Wyoming as Mr. Harris drove to Denver.

The informant did offer some information that turned out to be inaccurate. For example, the informant said that Mr. Harris would return (1) in a black vehicle rather than a brown one and (2) with a male rather than a female. For the predictions that did materialize, though, how could the informant have known without direct communication with Mr. Harris?

For example, the informant told Agent Patrick that Mr. Harris would (1) drive his truck to Denver and leave his vehicle with the supplier as collateral and (2) return in a vehicle with a Colorado license tag. How could the informant have known that Mr. Harris was going to change vehicles unless Mr. Harris had disclosed this plan? Similarly, the informant said that Mr. Harris would arrive on November 4 at about 11 a.m., and Mr. Harris was seen leaving the informant's trailer at about 11:45 a.m.

How could the informant have known when Mr. Harris would arrive unless the two of them had been in contact? And of course, Agent Patrick testified that the informant had purported to relay statements coming directly from Mr. Harris.

The district court could also rely on observations of the informant with Mr. Harris. On November 1 and 2, law-enforcement officers saw the informant with Mr. Harris as they set out to buy fentanyl. And on November 4, officers saw Mr. Harris's vehicle at the informant's trailer. Given these observations, the district court could reasonably conclude that the informant had first-hand knowledge of Mr. Harris's purchase of fentanyl while he was in Denver.

From the correct information provided by the informant about the Denver trip, the district court could

- reasonably credit the statements about Mr. Harris's purchase of fentanyl and

- reasonably assess the informant as reliable.

On appeal, we must credit that assessment because we view the evidence favorably to the government and the ruling. *See* Part 3, above.

With that assessment, we conclude that law-enforcement officers had probable cause to stop and search Mr. Harris's vehicle. Given the existence of probable cause, the district court didn't err in denying the motion to suppress.

7

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge