NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JULIE WAGNER,**

*Plaintiff-Appellant*

**v.**

**TREVOR ASHLINE, SIMPSON PERFORMANCE PRODUCTS, INC.,**

*Defendants-Appellees*

---

2021-1715

---

Appeal from the United States District Court for the Western District of North Carolina in No. 5:18-cv-00123-KDB-DCK, Judge Kenneth D. Bell.

---

Decided:  November 17, 2021

---

JAMES KEVIN GROGAN, JEFFREY E. SCHILLER, Grogan, Tuccillo & Vanderleeden, LLP, Springfield, MA, argued for plaintiff-appellant.  Also represented by LEON E. FARBMAN, JOSEPH ROMAGNANO.

CRAIG NELSON KILLEN, Nelson Mullins Riley & Scarborough LLP, Charlotte, NC, argued for defendants-appellees.  Also represented by LAUREN GRACE MARIE HUNSTAD.

---

Before DYK, HUGHES, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

Julie G. Wagner appeals the United States District Court for the Western District of North Carolina's summary judgment denying Ms. Wagner's claim to be added as a joint inventor of U.S. Patent No. 8,272,074 under 35 U.S.C. § 256, as well as her related state law claims of unjust enrichment, fraud, and constructive trust. Because we agree with the district court that Ms. Wagner presented insufficient evidence to corroborate her claim of joint inventorship as a matter of law, we affirm.

BACKGROUND

I

The '074 patent is directed to a head and neck restraint (HNR) device—a safety device for "controlling the head of a driver during a high-performance vehicle collision" by limiting the rotation of the driver's head and the displacement between the driver's head and torso. '074 patent, Abstract.

The cast of characters in this case includes: (1) Simpson Performance Products, Inc., a motorsports equipment supplier and the assignee of the '074 patent; (2) Trevor P. Ashline, the named inventor of the '074 patent, who has worked as an automotive safety design and testing engineer for nearly three decades; and (3) Julie G. Wagner, a registered nurse and named inventor of U.S. Patent No. 7,703,150, directed to a children's safety vest having flaps on the shoulder that confine the shoulder strap of a seatbelt to maintain the proper slope across the wearer's body.

Mr. Ashline began developing HNR devices in 2000, marketing and selling those products through his companies Safety Solutions, Inc., LFT Technologies, Inc., or Safety Dynamics, LLC. Safety Dynamics was the original assignee of U.S. Patent Application No. 11/787,532—the

application that became the '074 patent—until it was acquired by Simpson in 2010.

In 2001, Mr. Ashline began developing an HNR device that combined a rigid support plate extending down a driver's back and across the driver's shoulders as implemented in competitors' HNR devices with aspects of a strap harness system previously invented by Mr. Ashline. This device was disclosed in Mr. Ashline's U.S. Patent No. 6,931,669 and marketed as the "R3 device." Mr. Ashline tested prototypes of the R3 device in laboratory and race-track settings throughout 2002 and 2003.

Around the same time, Ms. Wagner, motivated by her experience caring for patients injured in serious car accidents, began developing her safety vest for children with her business partner Charles F. Foley. Ms. Wagner and Mr. Foley filed U.S. Patent Application No. 11/187,518 directed to their safety vest in July 2005.

Ms. Wagner and Mr. Ashline crossed paths for the first time in August 2003 when Ms. Wagner visited Mr. Ashline's workplace to inquire about crash testing her safety vest. Ms. Wagner also testified that they spoke on the phone twice in 2004.

In September 2005, Ms. Wagner visited Mr. Ashline and his wife, Nicole Filion-Ashline, at their home to continue discussing testing her vest. Ms. Wagner attested that Mr. Ashline and Ms. Filion-Ashline reviewed her '518 patent application during this meeting. J.A. 358–59 (Wagner Dep. 95:16–96:23). Ms. Wagner also inquired about the possibility of Mr. Ashline's company manufacturing her vest, and she left a physical prototype of the vest with Mr. Ashline for evaluation purposes.

In October 2005, Ms. Wagner met with Mr. Ashline and Ms. Filion-Ashline again, this time accompanied by Arthur F. Cooksey, an acquaintance of Ms. Wagner's who worked in publishing and marketing. They discussed

Ms. Wagner's vest and a series of safety books for children that Ms. Wagner wanted to create. Ms. Wagner's brief described an "ongoing collaboration" between herself and Mr. Ashline, who continued to assist her with developing the vest.

In March 2006, Ms. Wagner claims that she had a fight with Ms. Filion-Ashline in which Ms. Filion-Ashline asked Ms. Wagner to retrieve the prototype vest from the Ashline home. The parties agree that this was the last time that they communicated directly.

Later in 2006 and 2007, Mr. Ashline filed U.S. Provisional Application No. 60/797,921 and then the '532 application (the application that led to the '074 patent), directed to a revised design of the R3 device, also known as the Hybrid device.

Claim 1 of the '074 patent is representative:

A restraint device for controlling a driver's head during a vehicle collision, comprising:

*a member having shoulder portions at least partially positionable on top of at least a portion the shoulders of the driver*;

a tether attached to said member and adapted for being attached to a helmet;

a strap attached to said member and adapted for being attached to a vehicle's seat belt assembly; and

wherein the seat belt assembly serves as an anchor to control movement of the driver's head during a vehicle collision when said strap is attached to the seat belt assembly.

'074 patent col. 13 l. 66–col. 14 l. 11 (emphasis added to highlight limitation alleged to have been contributed by Ms. Wagner).  The shoulder portions are indicated by reference number 16 in Figure 2 of the '074 patent.



FIG. 2

'074 patent Fig. 2; *see id.* at col. 7 l. 62–col. 8 l. 20.

Ms. Wagner's '150 patent issued in April 2010 while prosecution of Mr. Ashline's '532 application was ongoing. Ms. Wagner testified that she called Mr. Ashline to inform him of the issuance of her '150 patent.  When Mr. Ashline never returned her call, Ms. Wagner became suspicious and "went to look to see if the shoulder portions were taken from [her]."  J.A. 396 (Wagner Dep. 133:1–16).  She then took it upon herself to search the United States Patent and Trademark Office's database for patent applications listing Mr. Ashline as an inventor and at that point became aware of Mr. Ashline's '532 application.  Ms. Wagner testified

that when she saw the application, she "just knew it had shoulder portions." *Id.*

In August 2010, Ms. Wagner retained a patent attorney who then sent a letter to Mr. Ashline's patent attorney demanding that the '150 patent be disclosed to the Patent Office as material to the prosecution of the '532 application. The letter made no mention of Ms. Wagner's alleged co-inventorship. Mr. Ashline's attorney then cited the '150 patent in an information disclosure statement, but the Examiner did not rely on the '150 patent in any rejection. In December 2010, Mr. Ashline assigned the '532 application to Simpson. The '074 patent issued from the '532 application in 2012.

II

In 2018, six years after the '074 patent issued and eight years after Ms. Wagner's attorney sent a letter to Mr. Ashline's attorney, Ms. Wagner sued Simpson and Mr. Ashline, seeking to be added as a joint inventor of the '074 patent under 35 U.S.C. § 256. Ms. Wagner also asserted state law claims for fraud, unjust enrichment, and constructive trust.

In February 2021, the trial court granted Simpson's and Mr. Ashline's motion for summary judgment on each of Ms. Wagner's claims. *Wagner v. Simpson Performance Prods., Inc.*, CIVIL ACTION NO. 5:18-cv-00123-KDB-DCK, 2021 WL 411144 (W.D.N.C. Feb. 5, 2021) (*Judgment Op.*). Among other things, the court determined that Ms. Wagner failed to provide sufficient corroboration of her claim of joint inventorship. *Id.* at *5–7. Because Ms. Wagner's state law claims depended on her joint inventorship claim, the trial court granted summary judgment to Simpson and Mr. Ashline on those claims as well.

Ms. Wagner appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment under the law of the regional circuit, here the Fourth Circuit. *Syngenta Crop Protection, LLC v. Willowood, LLC*, 944 F.3d 1344, 1355 (Fed. Cir. 2019). The Fourth Circuit reviews a district court's grant of summary judgment de novo. *Core Commc'ns, Inc. v. Verizon Md. LLC*, 744 F.3d 310, 320 (4th Cir. 2014). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

I

We begin with Ms. Wagner's joint inventorship claim. Ms. Wagner alleges that she contributed to the "shoulder portions" limitation in claim 1. Specifically, she asserts that she contributed to the invention by conceiving of using shoulder portions on top of the shoulders to keep the vehicle's shoulder belts in the correct position during a crash.

In support of her claim, Ms. Wagner testified that she "consider[ed] [Mr. Ashline] a partner" and that she "knew that [she] had a solution that would solve" the problem of injuries resulting from seatbelt displacement in accidents. J.A. 282 (Wagner Dep. 19:3–20:2). Ms. Wagner testified that she and Mr. Ashline "talked about the need for shoulder portions for the race car drivers and how [she] thought they should have [a] guiding restraining means and relative to the clavicle and with the shoulder belts" several times. J.A. 358–59 (Wagner Dep. 95:5–96:3). Ms. Wagner testified that her repeated insistence to Mr. Ashline that he needed to "have a restraining guidance means on the shoulder relative to the clavicle" inspired the "shoulder portions" claim limitations in the '074 patent. J.A. 283–85 (Wagner Dep. 20:13–22:18); *see also* J.A. 412–13 (Wagner Dep. 149:8–150:24), 419 (Wagner Dep. 156:1–14), 426–29 (Wagner Dep. 163:5–166:12). According to Ms. Wagner,

their business relationship unexpectedly soured in 2006 when Ms. Filion-Ashline purportedly called Ms. Wagner to "come back and get [her] vest" because Mr. Ashline was "going to make [his] own device." J.A. 404–05 (Wagner Dep. 141:12–142:8). Ms. Wagner alleged that she finally discovered that the "shoulder portions[] were taken from" her by Mr. Ashline and Simpson when, seven years later, Robert Levi, a manufacturing contact of hers saw "pictures that [Ms. Wagner] had of [her] vest." J.A. 380–81, (Wagner Dep. 117:17–118:21). Ms. Wagner testified that Mr. Levi "shared a lab" with Mr. Ashline and had knowledge of a go-kart vest manufactured and sold by Simpson. J.A. 382 (Wagner Dep. 119:4–16). It is Ms. Wagner's contention that, upon seeing her vest, Mr. Levi informed her that it was "obvious that [Mr. Ashline and Simpson] stole from [her]." J.A. 381–82 (Wagner Dep. 118:4–119:16).

An alleged co-inventor's contribution to the conception of the claim must be proven by clear and convincing evidence. *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). It is well established in our case law that a party claiming joint inventorship must proffer evidence corroborating her own testimony. This is because oral testimony of the alleged co-inventor on its own will generally not suffice as "clear and convincing" evidence of joint inventorship. *Price v. Symsek*, 988 F.2d 1187, 1194–95 (Fed. Cir. 1993). Rather, the purported inventor has the burden of providing "some evidence of independent corroboration" of their contribution to the conception of the invention as claimed. *Coleman v. Dines*, 754 F.2d 353, 360 (Fed. Cir. 1985). The corroboration requirement "prevent[s] fraud, by providing independent confirmation of the [alleged] inventor's testimony" and "provides an additional safeguard against courts being deceived by [alleged] inventors who may be tempted to mischaracterize the events of the past through their testimony." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006); *see also Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976,

980 (Fed. Cir. 1997). This requirement is applied as a "rule-of-reason" demand for independent evidence, and there is "no single formula that must be followed in proving corroboration." *Price*, 988 F.2d at 1195 (quoting *Berry v. Webb*, 412 F.2d 261, 266 (C.C.P.A. 1969)). The issue of whether an inventorship claim is sufficiently corroborated is a "question of fact, with the district court's determination subject to review for clear error." *Fleming v. Escort Inc.*, 774 F.3d 1371, 1377 (Fed. Cir. 2014).

The district court granted summary judgment of no joint inventorship after concluding that the evidence Ms. Wagner relied on as corroboration was not, as a matter of law, sufficient to corroborate her testimony. *Judgment Op.*, 2021 WL 411144, at *6–7. We have affirmed a district court's summary judgment of no joint inventorship when no reasonable fact finder could find that the record contained sufficient evidence to corroborate the alleged joint inventor's claim. *See, e.g.*, *Stern v. Trs. Of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006) (granting summary judgment where evidence was "insufficient to corroborate [a] claim of co-inventorship"). For the reasons below, we conclude that even when viewing all reasonable inferences in Ms. Wagner's favor, Ms. Wagner did not present sufficient evidence of corroboration to support her claim of co-inventorship as a matter of law.

Ms. Wagner first points us to the '074 patent and the patents from which the '074 patent claims priority ("the parent patents")[1] to corroborate her testimony. Ms. Wagner asserts that the fact that the parent patents did not contain the phrase "shoulder portions," while the '921 provisional and the '532 application that Mr. Ashline allegedly filed after their series of meetings did, corroborates her testimony that she contributed the "shoulder portions"

---

[1] The parent patents include Mr. Ashline's '669 patent and U.S. Patent No. 7,765,623.

concept.  We are not convinced.  Even though the parent patents did not expressly refer to "shoulder portions," they disclosed the concept of shoulder portions, as did Mr. Ashline's prototype on which his patents were based and which he developed before he met Ms. Wagner.  J.A. 99–101, 127–37.  For example, the parent patents both disclose:

> The lateral extensions 28 extend a distance along the driver's shoulders in order to provide suitable placement of the shoulder straps 20 and to assist in maintaining the restraint device 10 in position on the driver, particularly during an angular-frontal collision.

'623 patent col. 6 ll. 43–47; '669 patent col. 7 ll. 3–7.  An example of these "lateral extensions 28" is illustrated in Figure 2 of the '623 patent:



'623 patent Fig. 2

As shown above, the lateral extensions 28 are positionable on top of at least a portion of a driver's shoulders. The same is shown in Figure 2 of the '669 patent. Thus, the concept of shoulder portions as claimed in the '074 patent was already previously disclosed by Mr. Ashline in the parent patents. Therefore, the parent patents do not corroborate Ms. Wagner's testimony that she conceived of and contributed to the "shoulder portions" claimed in the '074 patent.

Next, Ms. Wagner relies on Mr. Cooksey's deposition testimony to corroborate her testimony. But Mr. Cooksey only testified as to the details of a single meeting at which he was present. Moreover, he testified that the meeting focused on Ms. Wagner's vest and her idea for a series of children's books. *Judgment Op.*, 2021 WL 411144, at \*6; *see also* J.A. 751 (Cooksey Dep. 21:2–15). Contrary to Ms. Wagner's characterization, Mr. Cooksey's testimony contained no further details to support that Ms. Wagner and Mr. Ashline ever discussed Mr. Ashline's invention. And when questioned about his meeting with Ms. Wagner, Mr. Ashline, and Ms. Filion-Ashline, Mr. Cooksey stated: "I don't recall a whole lot." J.A. 756 (Cooksey Dep. 26:2–8). We agree with the district court that Mr. Cooksey's testimony corroborates only the undisputed fact that Mr. Ashline and Ms. Wagner met and that they discussed Ms. Wagner's vest and her idea for a series of children's books. It does not corroborate Ms. Wagner's testimony in support of her claim of joint inventorship of the '074 patent. As the district court aptly stated, evidence that Mr. Ashline assisted Ms. Wagner is not evidence that Ms. Wagner assisted Mr. Ashline. *Judgment Op.*, 2021 WL 411144, at \*6.

Finally, Ms. Wagner argues that Mr. Ashline's deposition testimony corroborates her testimony that they met and spoke several times, and that she explained to him the concept of "shoulder portions." Mr. Ashline's testimony confirms that he and Ms. Wagner met and discussed testing Ms. Wagner's vest, J.A. 591–92 (Ashline Dep.

49:3–50:17) and Ms. Wagner's idea for a children's book series, J.A. 595 (Ashline Dep. 53:8–11). In addition, Mr. Ashline's testimony confirms that Ms. Wagner desired Mr. Cooksey "to do the marketing" for one of Mr. Ashline's go-kart racing products. J.A. 595 (Ashline Dep. 53:12–18). Finally, Mr. Ashline's testimony confirms that Ms. Wagner left a physical prototype of her vest with him. J.A. 600 (Ashline Dep. 58:6–25). Ms. Wagner claims that this testimony regarding these meetings and events corroborates the rest of her testimony, including that she advised Mr. Ashline on his invention and specifically told him to add shoulder portions. We disagree.

Considering the record as a whole, including Mr. Ashline's testimony and all of the other evidence relied on by Ms. Wagner, we agree with the district court's determination that Ms. Wagner failed to present sufficient corroborating evidence for her claim of joint inventorship as a matter of law. At best, the allegedly corroborating evidence demonstrates that Ms. Wagner and Mr. Ashline met and spoke several times over a period of three years, during which Ms. Wagner sought and received guidance from Mr. Ashline regarding her vest and/or a series of children's books.

In this regard, this case is similar to *Symantec Corp. v. Computer Associates International, Inc.*, 522 F.3d 1279 (Fed. Cir. 2008), where we affirmed the district court's summary judgment that an alleged co-inventor failed to establish a genuine issue of material fact that he was a co-inventor. In *Symantec*, the district court found that the allegedly corroborating evidence, a day planner, at most showed that the alleged co-inventor and the inventor spoke about the then-current state of the prior art. *Id.* at 1296. The court emphasized that this evidence "[did] not establish that [the purported co-inventor] contributed to the idea." *Id.* Likewise, the allegedly corroborating evidence here does not support that Ms. Wagner contributed to Mr. Ashline's patent application strategy or device design.

Specifically, Ms. Ashline's allegedly corroborating evidence supports only the non-material aspects of her testimony and does not support the material aspects.

We recognize that the rule of reason does not require that every detail of an alleged inventor's testimony be corroborated. *Fleming*, 774 F.3d at 1377 (citing *Cooper v. Goldfarb*, 154 F.3d 1321, 1331 (Fed. Cir. 1998)). But there must be more evidence than what Ms. Wagner presented here. Based on the minimal extent of the corroborating evidence, we are not persuaded that the district court erred in concluding that no reasonable fact finder could find that Ms. Wagner presented sufficient corroboration for her claim of joint inventorship.

## II

Ms. Wagner raises two additional issues on appeal, challenging the district court's claim construction and its determination that her state law claims were barred by the statute of limitations. Because we affirm the district court's summary judgment denying her claim of joint inventorship due to insufficient corroboration, we need not reach the district court's claim construction. And because Ms. Wagner's claims of unjust enrichment, fraud, and constructive trust depend on her joint inventorship status, our ruling on inventorship is dispositive as to those state law claims.

## CONCLUSION

We have considered Ms. Wagner's remaining arguments and find them unpersuasive. Because the district court properly granted summary judgment, we affirm.

## **AFFIRMED**